UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DANIEL HORACEK,

               Plaintiff,                    Case No. 1:20-cv-995

v.                                        Honorable Paul L. Maloney

T. LEBO et al.,

               Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.      Factual allegations

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Plaintiff

sues DRF Warden R. Rewerts, DRF Food Service Director T. Lebo, and MDOC Food Service Management and Support Team Director Kevin J. Weissenborn.

Plaintiff alleges that his Jewish religious tenets require that he maintain a kosher diet.  He is provided a kosher diet at DRF.  Plaintiff also alleges that he has medical conditions including severe heart arrythmia, heart valve defect, colitis/irritable bowel syndrome, high blood pressure, and COPD.  Plaintiff does not contend that a health care provider has ordered that he maintain a therapeutic diet to address those conditions; but, he does state that he wants "to be able to choose between the 'Healthy Choice' option set forth on the MDOC Men's Religious/Vegan Diet Menu in order to attempt to meet his  medical, health, and nutritional needs[.]"  (Compl., ECF No. 1, PageID.6.)  Plaintiff identifies those options as follows:

> BREAKFASTS: Hot Cereal OR Bran Cereal, Regular Jelly OR Diet Jelly, Bread OR Coffee Cake, Sugar OR Sugar Substitute, Orange Juice OR Apple Juice;
>
> LUNCH: Cookie/Cake OR Fruit, Regular Beverage OR Diet Beverage, Regular Jelly OR Diet Jelly;
>
> DINNER: Cookie/Cake OR Fruit, Regular Beverage OR Diet Beverage, Regular Jelly OR Diet Jelly

(*Id*., PageID.5.)

Plaintiff claims that he has been permitted to make those choices at other correctional facilities.  At DRF (or at least the east part of DRF where Plaintiff is housed), however, there is no religious kitchen.  Defendant Lebo informed Plaintiff that the kosher meals arrive complete and the healthy choices that are available on the non-kosher/non-religious line do not meet kosher requirements.  Plaintiff contends that he is being offered the choice to eat in accordance with his religious requirements or his health requirements, but not both.

Plaintiff complained first informally and then using the administrative grievance remedy.  In resolving Plaintiff's grievance, religious prisoners were offered the opportunity to

2

select fresh fruit in place of the provided dessert.  Plaintiff contends, nonetheless, that he is denied

that opportunity to make other "healthy choices" that he claims MDOC policy, procedure, and the

MDOC Therapeutic Diet Manual require.  Plaintiff argues that the MDOC's failure to follow its

own policies violates his Eighth Amendment rights because Defendants are ignoring Plaintiff's

serious medical needs, his First Amendment free exercise rights because they are compelling

Plaintiff to choose between his religious tenets or his health, and his Fourteenth Amendment equal

protection rights because Jewish prisoners at other MDOC facilities are able to self select the

"healthy choice" alternatives.

Plaintiff seeks a declaration that Defendants have so violated his rights, an

injunction compelling Defendants to permit the "healthy choice" alternatives identified above, and

compensatory and punitive damages.

## II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").  The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under

28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a

right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271

(1994).  As noted above, Plaintiff claims that Defendants are violating his Eighth, First, and

Fourteenth Amendment rights.

## III.    Eighth Amendment

The general requirements for MDOC food service are set forth in MDOC Policy

Directive 04.07.100 (Eff. Oct. 1, 2019).[1]  Those requirements include three meals a day and hot

---

[1] Plaintiff specifically relies upon MDOC policy directives 04.07.100, 04.07.101, and 03.04.100 to support the allegations in his complaint.  Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims.  "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits."  *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug.

food for two of those meals.  *Id*., ¶G.  All menus and all meals must satisfy the nutritional and caloric recommendations set forth in the dietary reference intakes approved by the National Research Council and menu planning must follow "The Dietary Guidelines for Americans."  *Id*., ¶ H.  The Food Services Program Manager is responsible for issuing standardized regular diet menus to be used at all MDOC correctional facilities.  *Id*., at ¶ J.  The standard menu must be used to feed all offenders at a facility, unless there is an emergency.  *Id*. at ¶ I.  The food service policy identifies two other types of diets other than the regular diet: therapeutic diets, as described in MDOC Policy Directive 04.07.101; and religious diets, as described in MDOC Policy Directive 05.03.150.

The Eighth Amendment limits the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).

"[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food."  *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832).  The Constitution "does not mandate comfortable prisons,"

---

3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

however.  *Rhodes*, 452 U.S. at 349.  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim regarding inadequate nutrition, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety."  *Id.* at 837.

The Eighth Amendment also obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Plaintiff does not claim that Defendants denied him adequate nutrition—or food necessary to meet his nutritional needs in light of his medical conditions.  He acknowledges that every one of his "healthy choice" alternatives was available to him in the regular meal line. Moreover, he does not claim that his religious diet, even if he chose to forego the items that he

wanted to replace with "healthy choice" alternatives, offered inadequate  nutrition.  After Plaintiff

complained, he was permitted to choose fruit instead of dessert.  Although he suggests that the

choice was not always permitted by the line workers, he does not attribute that to the Defendants.

Put differently, Plaintiff has not alleged that these Defendants were deliberately indifferent to his

medical needs or his nutritional needs.  Accordingly, Plaintiff has failed to state an Eighth

Amendment claim against them.

## IV.     First Amendment free exercise

The First Amendment provides "Congress shall make no law respecting an

establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend I.  The

right to freely exercise one's religion falls within the fundamental concept of liberty under the

Fourteenth Amendment.  *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).  Accordingly, state

legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with

the right.  *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of

many privileges and rights," inmates clearly retain the First Amendment protection to freely

exercise their religion.  *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To

establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he

seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held,

and (3) Defendant's behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d

1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001)

(same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that

"sincerely held religious beliefs require accommodation by prison officials").

Plaintiff has sufficiently alleged his sincerely-held religious beliefs and there is no

doubt that the following of a kosher diet is a religious practice.  The next consideration is "whether

7

the challenged practice of the prison officials infringes on the religious belief . . . ." *Kent*, 821

F.2d at 1224-25.  A practice will not be considered to infringe on a prisoner's free exercise unless

it "places[s] a substantial burden on the observation of a central religious belief or practice . . . ."

*Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479,

485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must

impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high."

*Living Water Church of God v. Charter Twp. Of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007).

"[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736.  "'[A] 'substantial burden'

must place more than an inconvenience on religious exercise.'" *Id.* at 739 (quoting *Midrash

Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)).  A particular

government action will not be considered a substantial burden merely because it "may make [the]

religious exercise more expensive or difficult . . . ." *Id*.

Here, Defendants have provided a kosher diet that complies with Plaintiff's

religious dietary requirements.  Based on Plaintiff's allegations, it is not his religious beliefs that

are offended by the diet, it is his concept of a healthy diet that is offended.  Therefore, it does not

appear that Defendants have substantially burdened the free exercise of Plaintiff's religion.

Moreover, even if Plaintiff were to forego the items he finds offensive from a health

perspective, it does not appear to be a substantial burden.  Defendants have authorized fruit instead

of dessert.  At lunch and dinner, therefore, Plaintiff is compelled to forego only sugar as a

sweetener and jelly.  Plaintiff must also forego that choice at breakfast.  It is not at all clear from

Plaintiff's allegations how hot cereal, bread, and orange juice cause health issues that are so

burdensome as to compel Plaintiff to compromise his religious beliefs while bran cereal, coffee

8

cake, and apple juice do not.  Accordingly, the Court concludes that Plaintiff has failed to identify any substantial burden on the free exercise of Plaintiff's religion and, therefore, has failed to state a claim under the First Amendment.

## V.    Equal protection

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  Plaintiff alleges that Defendants have intentionally treated him differently than others similarly situated without any rational basis for the difference—a "class of one" equal protection claim.

The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").  Plaintiff alleges disparate treatment here.  He claims that he, as a Jewish prisoner at DRF, is treated differently than he, or other Jewish prisoners, were or are treated at other MDOC correctional facilities.

An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ."  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368

(6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").  To be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'" *Umani v. Mich. Dep't of Corr.,* 432 F. App'x 453, 460 (6th Cir. 2011)  (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

The "others" who Plaintiff claims have been treated better than him are not similarly situated.  They are not at DRF, or at least not on the east side of DRF.  That difference is a mitigating difference because the east side of DRF does not have a religious kitchen.  Thus, although Plaintiff claims he has "been treated differently from other individuals . . . [he has failed] to allege any specific examples of *similarly situated* individuals . . . ."  *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008).  Indeed, Plaintiff's allegations suggest that all prisoners who are similarly situated—prisoners at DRF who are on a religious diet—are treated exactly as he is treated.  Therefore, he has failed to state an equal protection claim.  *See, e.g., Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) ("'Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim."); *Sanders v. City of Hodgenville*, 323 F. Supp. 3d 904, 911 (W.D. Ky. 2018) ("Sander's class-of-one claim fails as a matter of law . . . Sanders fails to identify any similarly situated individual who was treated differently.").

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28

U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    November 13, 2020                    /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge

11